IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHARLES ROBERT PERRY                                                                PLAINTIFF

vs.                                              CASE NO. **4:05CV567GH**

ETHICON, INC.; ET AL.                                                              DEFENDANTS

**ORDER**

Pending before the Court is plaintiff's motion for default judgment on liability, sanctions, and exclusion of false evidence.   Plaintiff contends that defendant EES (defendant or EES) presented false evidence at the first trial in May 2006,  and concealed its theory of defense until twelve days prior to trial. [1]

There is no doubt that a court has the inherent power to punish for bad faith conduct.  *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).  "A court's inherent power includes the discretionary 'ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Stevenson v. Union Pacific R. Co.*,   354 F.3d 739, 745 (8th Cir. 2004)(quoting *Chambers*, 501 U.S. at 44-45).   However, severe sanctions such as the entry of default should be used sparingly as " there is a strong policy in favor of deciding a case on its merits, and against depriving a part of [its] day in court."  *Chrysler Corp. v. Carey*, 186 F. 3d 1016, 1020 (8th Cir. 1999).

Plaintiff states that the cartridge which was first analyzed by EES' engineer, Ricardo Tovar and subsequently presented to plaintiff's expert, Fred Hetzel, revealed a failed to deploy staples (or wedge band bypass) on the right side.  Plaintiff contends that the straight stapler which was brought to trial and on which defendant's employees Neil Kukarni and Mark Ransick testified had a wedge band bypass on the left side.  Plaintiff's

---

[1] The first trial began on May 24, 2006, and ended on May 26, 2006, with the Court declaring a mistrial after the jury announced that they could not reach a verdict.

new expert, Richard Poe, opines that because of the different conclusions reached as to where the failure occurred, the stapler and cartridge brought to trial was not the one used on plaintiff.

It is clear that there was confusion as to whether an articulating stapler or a straight stapler was used during the surgery.  Much of the documentation and reports refer to an articulating stapler and it appears that for several years EES represented that an articulating stapler was used. In January, 2006, EES became aware that two different endocutters were used and that according to Kristi Geier, the Risk Manager at EES, the wedge band bypass was on a straight and not an articulating endocutter.  She states in the affidavit that plaintiff's counsel and his expert Dr. Hetzel "were made aware of this situation" on the same day she learned of the two different staplers.

The Court cannot find that defendant misrepresented which stapler was used or that plaintiff was prejudiced by this confusion.  Defendant revealed the situation sufficiently in time for plaintiff's expert, Dr. Hetzel, to consider it.  Furthermore, the evidence established that the use of an articulating versus a straight stapler was not material to the failure of the stapler to deploy.   Dr. Hetzel was questioned about whether the design of each stapler was the same. He testified they were.   The cartridge, rather than the endocutter itself, mattered.

The Court further cannot find that defendant presented false evidence at trial. There is now a factual dispute as to whether the cartridge examined by defendant's employees and plaintiff's expert is the same.  This is a matter for the jury to determine. As can be seen from Poe's affidavit, whether the right side or the left side failed may be based on the perspective at which one is viewing the device.    In any event, the dispute can be more fully developed at trial, and left for the jury to resolve.

In his second argument, plaintiff asserts that EES did not reveal its theory of defense until 12 days beofre the first trial, when it contended that the failure was due to

surgeon error. Plaintiff contends that at that time, EES alleged, for the first time, that the stapler Dr. Langford used on plaintiff had a gouge and traces of titanium on its knife, and that the cartridge of staples loaded into the stapler had indentations on it. According to Ransick and Kulkarni, the gouge, titanium and indentations were evidence that Langford had clamped the stapler's jaws over a titanium surgical clip during plaintiff's surgery.

The Court cannot find that plaintiff was unduly prejudiced. In January, 2006, EES filed a Notice of Potential Responsibility of Third Parties. It stated that although Dr. Langford's deposition had not yet been taken, it was "possible that Dr. Langford misused Defendants' products or used them in a manner or for a purpose not indicated or recommended by Defendants." By the time of Dr. Langford's deposition on February 10, 2006, plaintiff was already aware that an articulating stapler and a straight stapler were used and that EES considered Dr. Langford potentially responsible for plaintiff's injuries. Additionally, Dr. Langford testified at trial, and plaintiff was fully able to explore defendant's theory.

In sum, the Court finds that defendant has not engaged in conduct warranting the imposition of sanctions.

Accordingly, the motion for default judgment on liability, sanctions and exclusion of false evidence is denied.

IT IS SO ORDERED this 20th day of November, 2006.

_____
UNITED STATES DISTRICT JUDGE